564 So.2d 1127 (1990)
William Thomas KENNEDY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 88-2077.
District Court of Appeal of Florida, First District.
June 26, 1990.
*1128 Russell L. Healey of Lacy Mahon, Jr. and Mark H. Mahon, P.A., Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen. and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
MINER, Judge.
William Thomas Kennedy, Jr. was found guilty by a jury of conspiracy to commit armed robbery with a firearm, armed robbery with a firearm, three counts of aggravated assault with a deadly weapon, four counts of kidnapping while armed with a firearm and armed burglary. On the conspiracy conviction he was sentenced to a 30 year term of imprisonment with a three year mandatory minimum period. He received a sentence of life imprisonment with a three year mandatory minimum on the armed robbery count and life imprisonment on each of the four armed kidnapping counts and the armed burglary count. His conviction of three counts of aggravated assault resulted in sentences of five years each in the Department of Corrections. All sentences imposed were made to run concurrently.
In his appeal, Kennedy raises four issues. First, he argues that the trial court erred in sentencing him to a 30 year period of confinement with a three year mandatory minimum for the offense of conspiracy to commit robbery while armed with a firearm. Next, he maintains that it was error for the trial judge to impose a three year mandatory minimum sentence on his conviction for armed robbery with a firearm. With respect to the armed kidnapping counts, Kennedy asserts that his motions for judgment of acquittal at the close of the state's case and at the close of all the evidence should have been granted and, further, that it was error for the trial court to sentence him to life in prison on the armed kidnapping counts under the facts of the case. We affirm in part, reverse in part and remand.
This case begins with a reputed drug dealer who persuaded appellant Kennedy and two others that the Wopshall residence in rural McAlpin in Suwannee County, Florida, contained $100,000 in cash and at least five kilos of cocaine. He knew of the money and drugs, said the dealer, because residents of the Wopshall home were involved with him in a drug deal turned sour. Subsequently, the dealer and Kennedy and his two companions agreed among themselves that Kennedy and his friends would leave their Kingsland, Georgia, homes, meet with the drug dealer in Florida and then travel to McAlpin to "hit" the Wopshall home.
Sometime around 9:00 p.m. on the evening of January 4, 1988, after having the Wopshall house under surveillance for a good part of the day, Kennedy, dressed in a blue suit, left his two co-conspirators crouched down in the back of his blue Isuzu Trooper vehicle and walked over to an outbuilding used as a workshop where Mr. Wopshall was working with a young man, Tim Webb, the son of Wopshall's business partner. Kennedy engaged Wopshall in a land purchase discussion and, under the ruse of exchanging information, managed to lure him over to the blue Isuzu. There, Kennedy drew a pistol and held it on Wopshall while his two confederates, one masked, got out of the vehicle. With Kennedy holding the pistol, the three of them forced Wopshall to accompany them the 50 or so yards to his residence. Apparently, this activity did not engage Tim Webb's attention. Once inside the house, Kennedy handed the pistol to one of *1129 his companions as he put a stocking mask over his own face. Thereafter, Kennedy and the other accomplice ransacked the Wopshall home looking for money and drugs while the armed accomplice held Wopshall at gunpoint in the dining room.
Unaware of what was transpiring inside, Mrs. Wopshall came home shortly after 10:00 p.m. and, with Tim Webb, entered the house through the rear kitchen doorway. The armed accomplice trained his gun on them as Mr. Wopshall motioned for them to join him in the dining room. Holding the cocked gun on the Wopshalls and Webb, one of Kennedy's accomplices then threatened Mr. Wopshall's life and the other stated that if Wopshall did not open the safe "in 30 seconds", he would "blow Mrs. Wopshall's head off". Wopshall, pleading that he did not have the combination of the safe at hand, told the robbers to break into it.
Shortly after 10:15 p.m., Angie Timberlake, Webb's girlfriend, came calling at the Wopshall house. She, too, was directed to join the others in the dining room. After a few minutes, Kennedy directed his accomplices to move Mrs. Wopshall, Webb and Timberlake into the living room. That accomplished, Kennedy bound the three with duct tape. He then moved Mr. Wopshall to a bedroom, binding him with duct tape and telephone cord.
Finding no cache of drugs or substantial amount of cash, Kennedy and his cohorts made off with the safe, several guns, some coins and other items of value. The four victims freed themselves ten or fifteen minutes later and the Sheriff's office was called.[1]
On the basis of a tip, a Sheriff's investigator traveled to Georgia and met with one of Kennedy's accomplices who eventually confessed and agreed to testify for the state. The investigator was then led to the purloined guns and the other accomplice who also agreed to testify against Kennedy. An all-points bulletin resulted in the location of Kennedy's Isuzu. He escaped apprehension at that time but was later captured in Tennessee and returned to Florida for trial. Some items stolen from the Wopshall home as well as the yellow gloves he wore during the robbery were found in the Isuzu.
Appellant first urges that the trial court erred in sentencing him to a thirty year term with a three-year mandatory minimum on his conviction for conspiracy to commit robbery while armed with a firearm. We agree and reverse and remand for resentencing on the conspiracy conviction.
Conspiracy is a separate and distinct crime from the offense which is the object of the conspiracy. Here, the object of the conspiracy, i.e. the commission of robbery while armed with a firearm, is a felony of the first degree punishable by life in prison. Conspiracy to commit robbery while armed with a firearm is, under the facts of this case and by virtue of section 777.04(3) and (4)(b), Florida Statutes, a felony of the second degree and is punishable by a term not exceeding 15 years. See section 775.082(3)(c), Florida Statutes. Apparently, the trial court reclassified the conspiracy count to a first degree felony by applying the provisions of section 775.087(1) because of appellant's use of a firearm during commission of the armed robbery that was the object of the earlier conspiracy. Such enhancement was erroneous.
We do not suggest that conspiracy to commit robbery while armed with a firearm cannot under other circumstances be reclassified upward to a felony of the first degree. Presumably, in coming to the agreement to commit a crime, which agreement is the gravamen of criminal conspiracy, any one or all of the conspirators may be armed thereby subjecting himself/themselves to the enhancement feature of section 775.087(1). We hold only that under the facts of this case, section 775.087(1) cannot be used to reclassify a second degree felony to one of the first degree.
The trial court likewise erred in imposing a three-year mandatory minimum *1130 period on the conspiracy count. As appellee concedes, conspiracy to commit robbery while armed with a firearm is not one of the offenses catalogued in section 775.087(2) to which three year mandatory minimum sentences apply. Moreover, we find no merit in appellee's argument that a sentencing court should consider the object of the conspiracy, that is, the underlying offense, instead of the offense for which the defendant was charged and convicted, in determining whether to impose a mandatory minimum sentence. Appellee cites no case law to support such a contention and we are aware of none. Consequently, we hold that the so-called "mandatory minimum" sentences provided for in section 775.087(2), Florida Statutes can only be applied to the offenses specifically enumerated therein.
Appellant next argues that while he does not appeal from his conviction for such offense, the trial court erred in imposing a three year mandatory minimum sentence on his conviction for robbery while armed with a firearm. We disagree and affirm on this point.
Section 812.13(1), Florida Statutes condemns as robbery "the taking of money or other property  from the person or custody of another when in the course of the taking there is the use of force, violence, assault or putting in fear". Section 812.13(3)(b) defines what is meant by "in the course of the taking". An act is "in the course of the taking" "if it occurs either prior to, contemporaneous with or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events."
The record clearly reflects that Kennedy himself held Wopshall at gunpoint and in so doing set in motion the "continuous series of acts or events" which culminated in the sacking of the Wopshall residence as above described. The fact that, once inside the Wopshall home, Kennedy handed the pistol to one of his co-conspirators to hold on Wopshall is of no moment as far as his conviction for armed robbery with a firearm is concerned. We find equally unmeritorious appellant's contention that the jury did not expressly find that the robbery of Wopshall was accomplished with a firearm. Our reading of the verdict form reveals that the jury specifically found appellant guilty of "Robbery With a Firearm" "(of Kenneth Wopshall)" "as charged in the information."
Kennedy next complains that the trial court erred in denying his motion for judgment of acquittal on the four armed kidnapping counts of the information. Again, we disagree.
Each of these counts charges that Kennedy "forcibly, secretly or by threat" confined, abducted or imprisoned the named victim against that person's will "with the intent to commit or facilitate the commission" of  robbery or grand theft contrary to section 787.01(1)(a)(2), Florida Statutes. The Florida Supreme Court, in Faison v. State, 426 So.2d 963 (Fla. 1983), adopted a three-pronged test to determine whether kidnapping has occurred in instances where it is charged that the defendant engaged in activity proscribed by section 787.01, Florida Statutes, with the intent to commit or facilitate the commission of any felony. The Faison test provides that, to constitute kidnapping, the confinement, abduction or imprisonment (a) must not be slight, inconsequential or merely incidental to the underlying crime, (b) must not be of the kind inherent in the nature of the other crime; and (c) must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
In Ferguson v. State, 533 So.2d 763 (Fla. 1988), the supreme court held that the duration of confinement is not essential to the Faison test but can be considered in determining whether the confinement is slight or inconsequential. Additionally, the Ferguson court held that the question is whether the initial confinement was intended to further in a substantial way the ease or substantially lessen the risk involved in committing the crime rather than whether the purpose of the crime is accomplished.
Applying the Faison test as refined by Ferguson to the facts at hand, we find that *1131 the confinement of the Wopshalls, Webb and Timberlake was not slight or inconsequential or necessarily incidental to the robbery. Indeed, Kenneth Wopshall was confined at gunpoint from shortly after 9:00 p.m. until around 11:00 p.m. His wife and Tim Webb were confined for the better part of an hour and Angie Timberlake for some forty-five minutes. The Wopshalls were terrorized and threatened and all four victims were bound with duct tape and/or telephone cord. The jury could well have found that the binding and movement of the victims from room to room within the Wopshall residence served to make the underlying crime easier to commit or facilitated the escape of the perpetrators. In sum, we find that there was sufficient evidence upon which a jury could conclude that kidnapping as charged was committed.
Lastly, appellant contends that the trial court orally imposed five year sentences on the four kidnapping counts while the signed judgment and sentence forms provided for life imprisonment on each kidnapping conviction. He argues that the written sentences must conform to the trial court's oral pronouncement on the record. He is correct as to the state of the law in this respect. However, as the settled and approved record forwarded to this court pursuant to earlier orders reflects, the trial court did, in fact, orally pronounce life sentences on appellant's kidnapping convictions. The confusion as to what transpired at appellant's sentencing was obviously due to the incomplete record furnished to counsel, neither of whom had first hand knowledge of what occurred at the sentencing proceeding.
Accordingly, we REVERSE and REMAND for resentencing in accordance with this opinion on appellant's conviction for conspiracy to commit robbery while armed with a firearm. We otherwise AFFIRM the convictions and sentences appealed from.
NIMMONS, J., concurs.
BARFIELD, J., concurs with opinion.
BARFIELD, Judge, concurring.
I concur in the result only in this case because I do not think it appropriate to consider matters which are legally or factually not relevant to the issues presented to the court. Limiting the consideration of the conspiracy charge to the "facts of this case" and opining on the possibility of enhancing conspiracy under the provisions of section 775.087(1), Florida Statutes, are misleading and result in suggesting a position of this court on a legal issue not presented and with which I would not agree.
NOTES
[1] The record reveals that this call came into the Sheriff's office at 11:10 p.m.